IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-918-D

| | | |
|---|---|---|
| ABL & ASSOCIATES PLUMBING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

On January 26, 2017, ABL & Associates Plumbing, Inc. ("ABL" or "plaintiff") filed a corrected complaint against the United States of America ("United States" or "defendant") seeking refunds of penalties that it paid pursuant to 26 U.S.C. §§ 6651 and 6656 for failure to timely deposit and pay its federal employment taxes for the fourth quarter of 2011 and the first quarter of 2012 [D.E. 8]. On August 8, 2017, the United States answered the corrected complaint [D.E. 15]. On September 24, 2018, the United States moved for summary judgment [D.E. 25] and filed a memorandum [D.E. 25-1] and exhibits [D.E. 25-2–25-12] in support. On November 26, 2018, ABL responded in opposition [D.E. 31] and filed a statement of material facts [D.E. 32] and supporting documents [D.E. 33]. On February 11, 2019, the United States replied [D.E. 42]. As explained below, the court grants the United States' motion for summary judgment.

I.

ABL is a family-owned plumbing, fire protection, and HVAC contractor in Raleigh, North Carolina. See [D.E. 25-1] ¶ 1. ABL has four principal owners ("owners" or "principals"): Salvatore Lampuri, Concetto Lampuri, Anthony Lampuri, and Anthony Joseph Lampuri. Id. ABL primarily performs construction work for municipalities. See id. ¶ 2. ABL "procures most of its

work through bidding on contracts." Id.; see Ex. A [D.E. 25-3] 6–7.

ABL began to experience financial hardship in 2010 as a result of the economic downturn and housing market collapse. See [D.E. 25-1] ¶ 3; Ex. A [D.E. 25-3] 8–9. Because of "the failure of the housing market[,]" residential and light commercial contracting firms began to compete with ABL for bids on the kinds of projects that ABL typically completed. [D.E. 25-1] ¶ 3. Although ABL continued to win bids in 2010, its profit "margins" on those bids had decreased. Ex. A [D.E. 25-3] 9; see [D.E. 25-1] ¶ 3. Many of the contracts that ABL won in 2010 were for work to be performed in 2011 and thus were unprofitable. See [D.E. 25-1] ¶ 3.

In 2011, ABL completed two contracts that it won in 2010 at a substantial loss. See [D.E. 25-1] ¶ 5. On the first project, which ABL completed for the North Carolina Department of Environmental and Natural Resources, ABL lost approximately $400,000. See id.; Ex. A [D.E. 25-3] 25–26. On the second project, which ABL completed for Western Carolina University, ABL lost approximately $300,000. See [D.E. 25-1] ¶ 6; Ex. A [D.E. 25-3] 15–16. Additionally, general contractors struggled to pay ABL on time, further worsening ABL's cash flow problem. See Ex. A [D.E. 25-3] 9; [D.E. 31] 4; cf. [D.E. 25-1] ¶ 9.

In response to these financial difficulties, ABL reduced its staff from approximately 145 employees to 105 employees. See [D.E. 25-1] ¶ 7; Ex. A [D.E. 25-3] 12. ABL also eliminated vehicle allowances for its principals (approximately $1,000 per month per principal) and eliminated their salaries for approximately three or four months. See [D.E. 25-1] ¶ 7; Ex. A [D.E. 25-3] 17–18. In addition, ABL's principals loaned $1,080,581.47 to ABL between February 3, 2011, and September 22, 2011. See [D.E. 25-1] ¶ 8; Ex. B [D.E. 25-4]. However, ABL "only produced three promissory notes executed between Salvatore Lampuri and ABL for $200,000, $60,000, and $29,000." [D.E. 25-1] ¶ 8; see Ex. A [D.E. 25-3] 20; Ex. C [D.E. 25-5] (promissory installment

2

notes executed by ABL for $200,000.00, $60,000.00, and $29,600.00). Salvatore Lampuri testified that the principals did not execute promissory notes because ABL is a "family business." Ex. A [D.E. 25-3] 20. ABL sought a Small Business Administration ("SBA") loan in August 2012, after it had failed to deposit and file its federal employment taxes, but the SBA denied the loan. See [D.E. 25-1] ¶ 14; see Ex. A [D.E. 25-3] 21–22. ABL "did not apply for loans with other financial institutions." [D.E. 25-1] ¶ 14; see Ex. A [D.E. 25-3] 22.

By 2011, despite ABL's obligations to collect, account for, and pay federal employment taxes, ABL's principals decided to cease paying the company's payroll taxes to reduce expenses. See [D.E. 25-1] ¶¶ 9, 16; Ex. A [D.E. 25-3] 10–11, 18–19. ABL "contacted ADP, its payroll processor, and instructed ADP to cease paying over the trust fund portion of the federal employment taxes due." [D.E. 25-1] ¶ 9. ABL failed to timely deposit and pay all of its federal employment taxes for the quarterly tax period ending on December 31, 2011 (the "fourth quarter of 2011") and for the quarterly tax period ending on March 31, 2012 (the "first quarter of 2012"). See [D.E. 25-1] ¶¶ 10, 17–20. For the fourth quarter of 2011, ABL's tax liability was $169,820.20, and the Internal Revenue Service ("IRS") assessed ABL a federal tax deposit penalty of $25,473.01 and a failure to pay tax penalty of $13,585.61. See [D.E. 25-1] ¶¶ 17–18; Ex. H [D.E. 25-10]. For the first quarter of 2012, ABL's tax liability was $231,384.97. See [D.E. 25-1] ¶ 19; Ex. I [D.E. 25-11] 2. ABL timely paid $106,792.00 of its tax liability for the first quarter of 2012, and the IRS assessed a federal tax deposit penalty of $18,688.92, a failure to pay tax penalty of $6,229.64, and a late filing penalty of $5,606.68. See [D.E. 25-1] ¶ 20; Ex. I [D.E. 25-11]. ABL "paid all assessed federal employment taxes, penalties, and interest for both the fourth quarter of 2011 and the first quarter of 2012 by November 27, 2012." [D.E. 25-1] ¶ 21; see Ex. H [D.E. 25-10]; Ex. I [D.E. 25-11].

3

Although ABL "hoped to pay [its] employment taxes on a quarterly basis . . . each time the taxes came due, events intervened to compel ABL to pay a creditor other than the IRS." [D.E. 25-1] ¶ 10. In the fourth quarter of 2011, ABL had 127 employees and paid $883,782.43 in wages, including $12,806.82 to one of its principals. See [D.E. 25-1] ¶ 12; Ex. E [D.E. 25-7]. Between January 1, 2012, and March 31, 2012, ABL "paid at least $1,759,430 to its various vendors and suppliers," $25,000 to its lawyers, and $47,100 to its accountants. [D.E. 25-1] ¶ 11; Ex. D [D.E. 25-6]. In the second quarter of 2012, ABL had 117 employees and paid $1,024,655.00 in wages, including approximately $200,000 to its four principal owners. See [D.E. 25-1] ¶ 13; Ex. F [D.E. 25-8]. Despite its cash flow problems, ABL "has not been sued by any of its vendors of subcontractors for nonpayment." [D.E. 25-1] ¶ 15; Ex. A [D.E. 25-3] 23.[1] Additionally, ABL did not begin repaying the loans from its principals until 2014. See Ex. A [D.E. 25-3] 20–21.

---

[1] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment shall submit "a separate statement including a response to each numbered paragraph in the moving party's statement [of material facts]." Local Civ. R. 56.1(a)(2). "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Id. "Each statement by the movant or opponent . . . must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(c)." Local Civ. R. 56.1(a)(4). Under Rule 56(c), a party disputing a material fact must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Merely responding that a party "disputes" a material fact is insufficient under Rule 56 and Local Rule 56.1. See Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (per curiam) (unpublished).
ABL's response that it objects to this factual allegation, without citation to evidence, violates Local Rule 56.1. See [D.E. 32] ¶ 15. Because ABL does not oppose the statement of material fact by citing to particular parts of the record or showing that the United States cannot support its position based on the evidence in the record, the court deems the material fact admitted. See Horton v. Methodist Univ., Inc., No. 5:16-CV-945-D, 2019 WL 320572, at *1 n.1 (E.D.N.C. Jan. 23, 2019) (unpublished), appeal docketed, No. 19-1174 (4th Cir. 2019); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard, 262 F. Supp. 3d at 329 n.1.

On October 15, 2014, ABL filed an administrative claim "for an abatement of penalties for both tax periods with the IRS." [D.E. 25-1] ¶ 22; see [D.E. 8-2]. On December 15, 2014, the IRS denied ABL's request "citing a lack of substantiation and documentation to support ABL's claims." [D.E. 25-1] ¶ 23; see [D.E. 8-3]. On February 11, 2015, ABL timely appealed the IRS's denial. See [D.E. 25-1] ¶ 24; [D.E. 8-4]. On July 26, 2016, the IRS denied ABL's appeal "again citing a lack of substantiation and documentation." [D.E. 25-1] ¶ 25; see [D.E. 8-5]. On November 23, 2016, ABL filed its complaint, and, on January 26, 2017, ABL filed its corrected complaint. See [D.E. 1]; [D.E. 8]; [D.E. 25-1] ¶ 26. On February 7, 2018, the United States sent interrogatories to ABL, but ABL "provided no formal response to these [i]nterrogatories and provided the United States with only limited documentation of its claims in response." [D.E. 25-1] ¶ 27; Ex. J [D.E. 25-12]; [D.E. 32] ¶ 27.

## II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making

5

this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Scott v. Harris, 550 U.S. 372, 378 (2007).

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

III.

A tax assessment is "an IRS determination that a taxpayer owes the Federal Government a certain amount of unpaid taxes." United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002); see 26 U.S.C. § 6201(a) (listing "interest, additional amounts, additions to the tax, and assessable penalties" as assessments); United States v. Payton, No. 4:13-CV-55-BO, 2014 WL 407575, at *2 (E.D.N.C. Feb. 3, 2014) (unpublished), aff'd, 583 F. App'x 215 (4th Cir. 2014) (per curiam) (unpublished). Assessments are "entitled to a legal presumption of correctness." Fior D'Italia, Inc., 536 U.S. at 242; see United States v. Janis, 428 U.S. 433, 440–41 (1976); Welch v. Helvering, 290 U.S. 111, 115 (1933); Balkissoon v. Comm'r of Internal Revenue, 995 F.2d 525, 529 (4th Cir. 1993); Payton, 2014 WL 407575, at *2.

The IRS assessed penalties against ABL for failure to timely deposit and failure to pay its federal employment taxes. See 26 U.S.C. §§ 6651(a)(1), (a)(2), 6656(a). "An employer is required to withhold these taxes, place them into a trust fund, and report on a quarterly basis." Deaton Oil Co. v. United States, 904 F.3d 634, 637 (8th Cir. 2018); see Staff IT, Inc. v. United States, 482 F.3d

6

792, 798 (5th Cir. 2007); Diamond Plating Co. v. United States, 390 F.3d 1035, 1037–38 (7th Cir. 2004). "Failure to do so subjects the taxpayer to mandatory penalties." Deaton Oil Co., 904 F.3d at 637; see Staff IT, Inc., 482 F.3d at 798; Diamond Plating Co., 390 F.3d at 1038. "Congress intended to place upon the taxpayer an obligation to ascertain the statutory deadline and then to meet that deadline, except in a very narrow range of situations." United States v. Boyle, 469 U.S. 241, 249–50 (1985). Therefore, "companies withholding trust fund taxes must provide strong justification to avoid penalties." Diamond Plating Co., 390 F.3d at 1039.

To obtain abatement of federal employment tax penalties imposed under sections 6651 and 6656, "the taxpayer bears the heavy burden of proving (1) that the failure did not result from willful neglect, and (2) that the failure was due to reasonable cause." Boyle, 469 U.S. at 245 (quotations omitted); see §§ 6651(a)(1), (a)(2), 6656(a); Deaton Oil Co., 904 F.3d at 637–38; Staff IT, Inc., 482 F.3d at 798; Fran Corp. v. United States, 164 F.3d 814, 816 n.2 (2d Cir. 1999); United States v. Short, No. 1:13-CV-899, 2015 WL 9592521, at *5 & n.7 (M.D.N.C. Dec. 31, 2015) (unpublished); Dogwood Forest Rest Home, Inc. v. United States, 181 F. Supp. 2d 554, 560 n.4 (M.D.N.C. 2001) (collecting cases).

Willful neglect means "a conscious, intentional failure or reckless indifference." Boyle, 469 U.S. at 245. Thus, the taxpayer must show that the taxpayer's failure to file was not the result of carelessness, reckless indifference, or intentional failure. See id. at 246 n.4; Staff IT, Inc., 482 F.3d at 798. As for reasonable cause, the taxpayer must demonstrate "that [it] exercised ordinary business care and prudence and nevertheless was unable to file the return within the prescribed time." Id. (quotation omitted); see 26 C.F.R. § 301.6651-1(c); Deaton Oil Co., 904 F.3d at 637–38.[2]

---

[2] In relevant part, section 301.6651-1(c)(1) provides:

If the taxpayer exercised ordinary business care and prudence and was nevertheless

7

In evaluating whether a taxpayer was unable to pay a tax in spite of the exercise of ordinary business care and prudence,

> [C]onsideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) [it] could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax.

§ 301.6651-1(c)(1); see Fran Corp., 164 F.3d at 817. For example, lavish expenses or investments in speculative or illiquid assets without sufficient resources to pay a taxpayer's tax obligations may show that the taxpayer has not exercised ordinary business care. See § 301.6651-(c)(1); Fran Corp., 164 F.3d at 817. Additionally, courts consider "the nature of the tax which the taxpayer has failed to pay." § 301.6651-1(c)(2).

A majority of circuit courts to address the issue "recognize that financial hardship may constitute reasonable cause for abatement of penalties for nonpayment of taxes in some circumstances." Diamond Plating Co., 390 F.3d at 1038; see Van Camp & Bennion v. United States, 251 F.3d 862, 868 (9th Cir. 2001); E. Wind Indus., Inc. v. United States, 196 F.3d 499, 507–08 (3d Cir. 1999); Fran Corp., 164 F.3d at 819; cf. Staff IT, Inc., 482 F.3d at 794; Q.E.D., Inc.

---

> unable to file the return within the prescribed time, then the delay is due to a reasonable cause. A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that [it] exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if [it] paid on the due date.

26 C.F.R. § 301.6651-1(c)(1). The regulations explain that the term "undue hardship"

> means more than an inconvenience to the taxpayer. It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date of the amount with respect to which the extension is desired. If a market exists, the sale of property at the current market price is not ordinarily considered as resulting in an undue hardship.

26 C.F.R. § 1.6161-1(b).

8

v. United States, 55 Fed. Cl. 140, 145–47 (2003). But see Brewery, Inc. v. United States, 33 F.3d 589, 592 (6th Cir. 1994). For financial hardship to constitute reasonable cause, however, extraordinary circumstances must be present. See Synergy Staffing, Inc. v. United States Internal Revenue Serv., 323 F.3d 1157, 1160 (9th Cir. 2003). "Evidence of financial trouble, without more, is not enough." Id. For example, reasonable cause existed when a taxpayer, who depended only on government contracts from the Department of Defense for business, refused to pay bribes to corrupt officials to win contracts, causing the taxpayer to be unable to pay its rent, its suppliers, or its employees' health premiums or union dues and continue to operate with minimal staffing as part of an investigation of the corrupt officials. See E. Wind Indus., 196 F.3d at 508–13 ("[T]he illegal conduct of the corrupt employees of the Defense Agencies, after the [t]axpayers refused to accede to the bribery demands, caused the financial distress which resulted in the [t]axpayers' inability to pay its employment taxes timely."); PARCC Health Care, Inc. v. United States, 238 F. Supp. 2d 435, 443 (D. Conn. 2002). Similarly, reasonable cause existed when a taxpayer faced "potential ruin" should it pay its federal employment taxes. Van Camp & Bennion, 251 F.3d at 868; see Fran Corp., 164 F.3d at 820; Babcock Ctr., Inc. v. United States ex rel. Internal Revenue Serv., No. 3:11-1721-CMC, 2013 WL 1857688, at *6 (D.S.C. May 2, 2013) (unpublished).

A.

In count one, ABL seeks a refund of penalties paid for the fourth quarter of 2011. See Compl. [D.E. 8] ¶¶ 6–14. The IRS assessed penalties against ABL for failure to pay and deposit its federal employment taxes. See Ex. H [D.E. 25-10]. Viewing the evidence in the light most favorable to ABL, ABL has shown that it suffered general financial hardship during the fourth quarter of 2011 due to the housing market collapse. However, the court must consider "all the facts and circumstances of [ABL]'s financial situation, including the amount and nature of [ABL]'s

9

expenditures in light of the income (or other amounts) [it] could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of the tax." 26 C.F.R. § 301.6651-1(c)(1). Between January 1, 2012, and March 31, 2012, ABL paid "at least $1,759,430 to its various vendors and suppliers," "$25,000 to its lawyers[,] and $47,100 to its accountants." [D.E. 25-1] ¶ 11. Additionally, ABL paid $883,782.43 in wages to its 127 employees, including $12,806.82 to one of its owners. See id. ¶ 12; Ex. E [D.E. 25-7] 1 (listing payment to "S. Lampuri"). ABL did not produce evidence that it owed any money to creditors besides its owners at this time or that it made any payments to any creditors. See [D.E. 25-1] ¶ 27.

Even assuming that ABL's failure to timely pay federal employment taxes did not result from willful neglect, no rational jury could conclude that ABL's failure was for reasonable cause. Although ABL can show that it experienced financial hardship, ABL fails to present evidence that its continued viability as a business would have been threatened had ABL paid its federal employment taxes. ABL's decisions to eliminate vehicle allowances, temporarily eliminate salaries for its owners, and reduce its staff by approximately 40 employees, while indicative of financial hardship, do not demonstrate the extraordinary circumstances necessary to establish that ABL used ordinary business care and prudence in failing to pay its federal employment taxes. Moreover, ABL's situation, in which the market for its services suffered but nevertheless existed, does not constitute undue hardship to ABL. See 26 C.F.R. § 1.6161-1(b). Although financial hardship may constitute reasonable cause, no rational jury could conclude that ABL's financial hardship was substantial enough to constitute reasonable cause. See E. Wind Indus., 196 F.3d at 509–12. Furthermore, ABL decided to prioritize paying others—including approximately $1.76 million to its vendors and suppliers, $25,000 to its lawyers, $47,100 to its accountants, and $12,806.82 to one of its owners—instead of paying the IRS. See Ex. A [D.E. 25-3] 19 (discussing ABL's decision

to prioritize paying its employees over its tax obligations). ABL fails to present evidence that these expenses were necessary to maintain ABL as a going concern.

Finally, ABL fails to present other evidence that it exercised ordinary business care and prudence during the fourth quarter of 2011. For example, ABL did not apply for commercial loans when faced with cash flow difficulties. Although ABL claims that it received loans from its owners, ABL only produced promissory notes for three loans from one owner. Even viewing the evidence in the light most favorable to ABL, ABL has not established that it exercised ordinary business care and prudence in deciding not to pay its federal employment taxes on time. See Fran Corp., 164 F.3d at 819 ("[I]t will be the rare case where the government is made the unwilling partner in a floundering business . . . without the employer incurring the duty to pay a penalty for having made such a choice . . . ." (quotation omitted)). Accordingly, the court grants the United States' motion for summary judgment on count one.

B.

In count two, ABL seeks a refund of penalties paid for the first quarter of 2012. See Compl. [D.E. 8] ¶¶ 15–23. The IRS assessed penalties against ABL for failure to pay and deposit its federal employment taxes, and the IRS assessed a late filing penalty against ABL. See Ex. I [D.E. 25-11]. During the second quarter of 2012, ABL paid its 117 employees $1,024,655.00 in wages, including nearly $200,000 to its four owners. See [D.E. 25-1] ¶ 13. Even viewing the evidence in the light most favorable to ABL, ABL fails to establish that the financial hardship that it experienced in the first quarter of 2012 constitutes reasonable cause to fail to pay its federal employment taxes on time. Although ABL failed to pay $124,592.97 in taxes on time for the first quarter of 2012, ABL was able to pay its owners nearly $200,000 in wages. See [D.E. 25-1] ¶¶ 13, 19. No rational jury could

11

conclude that ABL used ordinary business care and prudence, and yet, was unable to file its taxes on time.

As for whether ABL timely filed its taxes for the first quarter of 2012, ABL's return was due on April 30, 2012. See [D.E. 25-1] ¶ 19. ABL filed its return on May 17, 2012. See id. ABL attached a copy of Form 941 dated April 27, 2012, to its complaint. See [D.E. 8-8] 15–16. However, a "document or payment is deemed to be filed or paid on the date of the postmark stamped on the envelope or other appropriate wrapper (envelope) in which the document or payment was mailed." 26 C.F.R. § 301.7502-1(a); see 26 U.S.C. § 7502(a)(1); Grothues v. Comm'r, 84 T.C.M. (CCH) 561, at *12–13. The date on a form, by itself, is not evidence of timely filing. See, e.g., Grothues, 84 T.C.M. at *12 (noting "timely mailing is timely filing").

The only evidence that ABL has produced is a copy of its Form 941 dated April 27, 2012. Even assuming ABL's failure to produce an envelope is not fatal to its claim that it timely filed its tax return, ABL has not produced evidence from which a rational jury could conclude that ABL timely filed its return. Moreover, assessments are presumed correct. See Fior D'Italia, Inc., 536 U.S. at 242; Janis, 428 U.S. at 440–41. Because ABL has failed to rebut the presumption that the assessment was correct, the court concludes that the IRS properly assessed a late filing penalty against ABL. Accordingly, the court grants the United States's motion for summary judgment on count two.

IV.

In sum, the court GRANTS defendant's motion for summary judgment [D.E. 25]. The clerk shall close the case.

SO ORDERED. This **21** day of May 2019.

                                                                           JAMES C. DEVER III
                                                                           United States District Judge